**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| American Diagnostic Medicine, Inc. | Case No. 11-03368 |
| Debtor. | Honorable Carol A. Doyle |
| | Hearing: November 29, 2011 at 10:30 a.m. |

**FINAL FEE APPLICATION OF K&L GATES LLP AS COUNSEL**
**TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

K&L Gates LLP ("*K&L Gates*"), former counsel to the Official Committee of Unsecured Creditors (the "*Committee*") appointed in the above-captioned bankruptcy case, hereby submits its *Final Fee Application of K&L Gates LLP as Counsel to the Official Committee of Unsecured Creditors* (the "*Application*"), relating to services rendered and expenses incurred from March 28, 2011 through August 26, 2011 (the "*Application Period*"),[1] and in support thereof, respectfully states as follows:

**BACKGROUND**

1. On January 28, 2011 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 (the "*Chapter 11 Case*") of title 11 of the United States Code (the "*Bankruptcy Code*"). On March 28, 2011, the Office of the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

2. On April 14, 2011, this Court entered an order granting the Committee's application to employ K&L Gates as its counsel, effective as of March 28, 2011 (Docket No. 96).

---

[1] After the Committee filed its motion to substitute counsel (as discussed herein), an attorney at K&L Gates with an hourly rate of $325 spent an additional six hours preparing this Application and estimates that he will spend two hours preparing for a hearing on and prosecuting this Application. K&L Gates thus seeks the allowance of, and direction to the Debtor to pay, an additional $2,600 in compensation to K&L Gates for such work.

CI-9239685 v1

On September 6, 2011, the Committee filed a motion seeking to substitute the law firm of Goldstein & McClintock LLC for K&L Gates LLP *nunc pro tunc* to August 26, 2011 at 5:00 p.m. (Docket No. 200). Such motion was granted on September 27, 2011 (Docket No. 229).

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 330, 331, 503(b), and 507(a) of the Bankruptcy Code, and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

## DISCUSSION OF APPLICABLE STANDARD

5. Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a).

6. The Seventh Circuit Court of Appeals has stated that:

> The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and

>   the results obtained, and a complex of other considerations under
>   the heading of "billing judgment."

*Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). Additionally, other courts of appeal have recognized that:

>   [I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

*Boston and Main Corp. v. Moore*, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

7.  In reviewing the Application, the Court should be guided by the Seventh Circuit's instruction to ascertain whether such services were rendered and billed in accordance with the established market for legal services in similar matters:

>   [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 568 (7th Cir. 1992); *see Mann v. McCombs (In re McCombs)*, 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy courts must consider whether the fee awards are commensurate with fees for professional services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.").

8.  In *Continental Securities*, the Seventh Circuit found error in the lower court's practice of: (a) placing ceilings on the hourly rates of all lawyers; (b) refusing to allow paralegal services to be compensated at market rate; (c) refusing to award a risk multiplier; (d) making

3

large across-the-board cuts in research time; (e) making large across-the-board cuts in conference time; and (f) refusing to allow attorneys to bill computerized legal research services (*e.g.*, Westlaw). *Continental Illinois Securities Litigation*, 962 F.2d at 568-70.

9. In evaluating the Application, this Court should consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the preclusion of other employment caused by K&L Gates' retention in this case, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. *See In re Alberto*, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

## SERVICES PERFORMED

10. K&L Gates' 2011 hourly rates of compensation for attorneys and paraprofessionals that have performed services herein range from $200 to $740. K&L Gates consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient, and practical manner possible.

11. Monthly statements detailing the services rendered and actual and necessary expenses incurred by K&L Gates during the Application Period are attached hereto and incorporated herein as follows:

    (a)    <u>Exhibit A</u>: March 2011 Statement of Services Rendered and Expenses Incurred;

    (b)    <u>Exhibit B</u>: April 2011 Statement of Services Rendered and Expenses Incurred;

    (c)    <u>Exhibit C</u>: May 2011 Statement of Services Rendered and Expenses Incurred;

    (d)    <u>Exhibit D</u>: June 2011 Statement of Services Rendered and Expenses Incurred;

(e) <u>Exhibit E</u>: July 2011 Statement of Services Rendered and Expenses Incurred;

(f) <u>Exhibit F</u>: August 2011 Statement of Services Rendered and Expenses Incurred; and

(g) <u>Exhibit G</u>: Integrated eSolutions Invoice.[2]

12. In accordance with Bankruptcy Rule 2016, the Application filed and served by K&L Gates has attached as exhibits: (i) documents containing detailed chronological narratives of the time spent, the dates and descriptions of the services rendered, and the identity of the K&L Gates attorneys and paraprofessionals who provided services on behalf of the Committee during the applicable Application period, divided among uniform categories adopted by K&L Gates for the administration of this Chapter 11 Case; and (ii) a summary and detailed listing of each disbursement incurred during the Application Period.

13. In preparing this Application, K&L Gates calculated the amount of time spent by each attorney and paralegal performing actual and necessary legal services on behalf of the Committee. The data came directly from computer records that are kept for each of K&L Gates' clients and are generated by time entries recorded by each K&L Gates billable timekeeper. These entries are reported to the firm's computer which produced the time records for the Application.

14. No agreement or understanding exists between K&L Gates and any other person for the sharing of compensation received or to be received in connection with this Chapter 11 Case, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

15. K&L Gates reserves the right to correct, amend, or supplement this Application.

---

[2] Such expenses relate to discovery costs incurred by the Committee.

5

16.     A summary of compensation requested herein regarding each of the K&L Gates professionals and paraprofessionals is set forth below:

**Services Rendered in 2011 During the Application Period**

| Timekeeper | Title | Year of Illinois Bar Admission | Hourly Rate | Total Hours | Total Compensation Requested |
|---|---|---|---|---|---|
| Paul T. Metzger | Partner | 1976 | $740.00 | 2.0 | $1,480.00 |
| Harley J. Goldstein | Partner | 1998 | $645.00 | 0.9 | $580.50 |
| Dawn L. Johnson | Partner | 2001 | $460.00 | 0.4 | $184.00 |
| Sven T. Nylen | Partner | 2002 | $425.00 | 0.6 | $255.00 |
| Matthew E. McClintock | Partner | 2003 | $415.00 | 129.4 | $53,701.00 |
| Jeffrey M. Heller | Associate | 2007 | $325.00 | 0.4 | $130.00 |
| Patrina O'Farrell | Paraprofessional | N/A | $280.00 | 5.8 | $1,624.00 |
| Teresa Gomez | Paraprofessional | N/A | $215.00 | 6.1 | $1,311.50 |
| Ryan P. Swan | Paraprofessional | N/A | $200.00 | 7.9 | $1,580.00 |
| **TOTAL** | | | | 153.5 | $60,846.00 |
| **Blended Rate for All Timekeepers:** | | | | | $396.39 |

17.     During the Application Period, K&L Gates devoted **153.5** hours to representing the Committee with respect to categories "A" through "K" below and, in so doing, has provided the Committee with actual and necessary legal services worth a total of **$60,846.00**, and has incurred actual and necessary expenses totaling **$2,600.69**.  Below, this Application sets forth in detail, and broken down by activity, the work performed by K&L Gates and the time spent during the Application Period:

**A.     Case Administration                          $8,863.00**

18.     K&L Gates spent **20.8** hours at a cost of **$8,863.00** on general case administration matters.  This category primarily includes time spent performing necessary case administration tasks (including maintaining and updating dockets, calendars, and correspondence files, and retrieving necessary documents), reviewing incoming pleadings, correspondence, and notices, and corresponding with parties in interest concerning general case matters.  This category may

6

also include matters which encompass more than one other discrete category, including the consideration of issues related to discovery.

**B.     Cash Collateral**                                           **$2,656.00**

19.     K&L Gates spent **6.4** hours at a cost of **$2,656.00** on cash collateral issues. This matter primarily includes time spent negotiating the terms of cash collateral use and reviewing and revising cash collateral orders.

**C.     Investigation of Operations and Assets**                    **$22,700.50**

20.     K&L Gates spent **54.7** hours at a cost of **$22,700.50** investigating the Debtor's operations and assets. This matter primarily includes conducting witness investigations regarding potential litigation assets, drafting subpoenas and document requests, and preparing for and conducting depositions.

**D.     K&L Gates Retention and Fee Applications**                  **$1,250.50**

21.     K&L Gates spent **3.1** hours at a cost of **$1,250.50** on K&L Gates retention and fee application issues. This category primarily includes time spent working on K&L Gates' retention application, and reviewing and preparing the exhibits to this Application to ensure compliance with the necessary detail requirements and protection of privilege. Additional fees are being requested in connection with preparing and prosecuting this Application.

**E.     Executory Contracts and Leases**                            **$2,282.50**

22.     K&L Gates spent **5.5** hours at a cost of **$2,282.50** on matters associated with lease assumption and claims regarding the same.

**F.     Claims Analysis**                                           **$581.00**

23.     K&L Gates spent **1.4** hours at a cost of **$581.00** analyzing claims asserted against the Debtor and the overall outstanding claims pool.

7

**G.  Secured Creditors** $4,404.50

24. K&L Gates spent **12.5** hours at a cost of **$4,404.50** on secured lender issues. This matter primarily includes time spent reviewing loan documents, conducting organizational with the Secretary of State, analyzing lien searches, and addressing the same with the Debtor's secured creditors.

**H.  Committee Meetings and Governance** $1,872.00

25. K&L Gates spent **4.4** hours at a cost of **$1,872.00** preparing for and attending Committee meetings, updating Committee members on case developments, and drafting bylaws and meeting minutes.

**I.  Asset Sales** $1,411.00

26. K&L Gates spent **3.4** hours at a cost of **$1,411.00** on matters relating to potential sales of the Debtor's assets, including reviewing pleadings and schedules, corresponding with potential purchasers, and corresponding with the Debtor and Committee members regarding the same.

**J.  Plan/Disclosure Statement** $3,990.00

27. K&L Gates spent **9.6** hours at a cost of **$3,990.00** analyzing potential exit strategies, researching potential plan structure issues, and analyzing tax implications of a potential plan.

**K.  Litigation and Avoidance Actions** $10,835.00

28. K&L Gates spent **31.7** hours at a cost of **$10,835.00** on litigation issues. This category includes time spent on issues related to improper salaries being paid by the Debtor, formulating a strategy to access and recover assets from ADM Imaging, researching potential causes of action against entities related to the Debtor, and drafting pleadings, including a

complaint for rule to show cause, a motion seeking an injunction, a motion to remove family members from the Debtor's payroll and to force the Debtor to provide information, and a motion for authority to prosecute claims.

## **EXPENSES INCURRED**

29. K&L Gates incurred actual out of pocket expenses in the amount of **$2,600.69**, all of which were necessary for the proper representation of the Debtors in these bankruptcy proceedings. K&L Gates charges its private clients for expenses in the exact manner as requested herein. The expenses are further detailed by category below:

(a) Photocopying: K&L Gates incurred in-house copying charges in the amount of $465.00. The cost charged for K&L Gates' in-house duplication service is 20 cents per copy. K&L Gates maintains a record of in-house copies through a computerized system. This procedure requires an operator to key in a client's code number on a keypad attached to the copier.

(b) Telephone: K&L Gates incurred $1.77 in long distance telephone charges.

(c) Air Courier: K&L Gates incurred expenses in the amount of $14.96 in connection with air courier expenses to provide certain materials to parties in interest in a timely manner.

(d) Overtime Transportation: K&L Gates incurred actual out-of-pocket expenses in the amount of $36.00 in relation to local travel for attorneys working outside of regular business hours.

(e) Meals: K&L Gates incurred actual out-of-pocket expenses in the amount of $98.45 in relation to meal expenses for attorneys working outside of regular business hours.

(f) Postage: K&L Gates incurred postage expenses in the amount of $18.69 in connection with service of pleadings.

(g) Legal Research: K&L Gates incurred $444.29 in connection with conducting legal research on Westlaw.

(h) UCC Searches: K&L Gates incurred $471.25 in connection with conducting UCC searches of various entities.

(i) Depositions: In connection with preparing for and conducting depositions, K&L Gates incurred $190.00 in witness fees and expenses, $707.90 in

9

    court reporter charges and in connection with obtaining transcripts, and $152.38 in costs for service of process.

 (j) <u>Discovery</u>:  In connection with discovery conducted, Integrated eSolutions billed the Committee $101.40.

## BENEFIT TO THE ESTATE

30. On behalf of the Committee, and in furtherance of Committee's duties pursuant to the Bankruptcy Code, K&L Gates took all necessary steps to advance the interests of the Debtor's general unsecured creditors.  K&L Gates was involved in all aspects of this Chapter 11 Case and ensured that the interests of the Committee and its constituents have been protected throughout.

31. In particular, K&L Gates, on behalf of the Committee, engaged in an extensive investigation of the Debtor's financial affairs and prepetition conduct.  As a result of that investigation, the Committee discovered significant causes of action against certain insiders and affiliates of the Debtor.  In turn, K&L Gates was successful in obtaining leave for the Committee to prosecute such claims.  *See Order Authorizing the Official Committee of Unsecured Creditors Leave to Pursue Claims Against ADM Imaging, Inc., Sam Kancherlapalli, and Anand Kancherlapalli* (Docket No. 185).  Therefore, the Committee will be able to pursue those actions for the benefit of all unsecured creditors.

32. The foregoing services benefited the bankruptcy estate and, as such, the compensation and reimbursement of expenses requested herein are reasonable and should be allowed.

## NOTICE

33. K&L Gates has given notice of this Application to (a) the United States Trustee, (b) counsel to the Debtor, (c) current counsel to the Committee, (d) all parties set forth on the creditor matrix, and (e) all parties who have registered to receive ECF service in this case.  K&L

Gates believes this notice is sufficient and requests that the Court waive any further notice requirement.

**WHEREFORE**, K&L Gates respectfully requests that the Court enter an order:

(a) allowing K&L Gates $60,846.00 in final compensation and $2,702.09 in final reimbursable expenses for the Application Period as chapter 11 administrative expenses of the Debtor's estate pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code;

(b) allowing K&L Gates an additional $2,600 in compensation, as set forth above, in connection with drafting this Application, and preparing for a hearing on and prosecuting this Application;

(c) authorizing K&L Gates to apply the $25,000 it is holding in retainer in partial satisfaction of the amounts requested in this Application;

(d) authorizing and directing the Debtor to pay the outstanding amount of $38,548.09, plus an additional $2,600 as discussed above, to K&L Gates within ten (10) days of entry of an order granting this Application; and

(e) granting such other and further relief this Court deems just and proper.

Dated: October 18, 2011          Respectfully submitted,

**K&L GATES LLP**

  /s/ Jeffrey M. Heller
  One of its Attorneys

Sven T. Nylen (No. 6278148)
Jeffrey M. Heller (No. 6294314)
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: (312) 372-1121
Facsimile: (312) 827-8000